Terry CASEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998–CA–000744–MR.

Court of Appeals of Kentucky.

May 7, 1999.

Terry Casey, LaGrange, pro se.

A.B. Chandler, III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Frankfort, for Appellee.

Before: BUCKINGHAM, COMBS, and McANULTY, Judges.

*OPINION*

BUCKINGHAM, Judge:

Terry Casey (Casey) appeals from an order of the Bullitt Circuit Court denying his motion to vacate, set aside or correct judgment brought pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. Finding no error, we affirm.

On October 1, 1995, a white male entered Beeler's Drug Store in Lebanon Junction and stole a large quantity of prescription drugs. The man went to the pharmacy counter at the rear of the store and handed the pharmacist a note demanding various drugs while pointing a .9mm pistol at him. After obtaining the drugs, the man exited the store through the front entrance and fired several shots at a dog before leaving in a light blue automobile driven by another person. Shortly thereafter, police officers arrived at the store and obtained statements from three store employees and five persons living near the store who saw the suspect leaving the store and getting into the car as it sped away. The officers also recovered a shell casing from one of the shots fired by the suspect.

On October 5, 1995, Detective Stewart of the Kentucky State Police obtained information that Casey had sold prescription drugs to an informant in Louisville. The informant indicated that Casey told him he had been involved in a drug store robbery. At about this time, a state police laboratory technician informed Detective Stewart that she had recovered three latent fingerprints from the robbery note. A comparison of these latent prints to Casey's prints already on file resulted in a match on all three prints.

While the state police were conducting their investigation of the robbery, Jefferson County police officers arrested Casey on drug charges in Louisville and performed a search of his residence. During the search, the police recovered a .9mm Luger pistol matching the description of the gun used in the drug store robbery. A later analysis showed that the spent cartridge casing recovered outside the drug store had been fired from the Luger pistol recovered from Casey's residence.

In November 1995, the Bullitt County Grand Jury indicted Casey on one felony count of robbery in the first degree (KRS 515.020) and one felony count of theft by unlawful taking over $300 (KRS 514.030). On September 3, 1996, the day of his trial, Casey entered a guilty plea to the robbery charge pursuant to a plea agreement with the Commonwealth. Under the agreement, the Commonwealth moved to dismiss the theft charge and recommended that Casey receive a sentence of ten years on the robbery charge. Casey asked the trial court to sentence him immediately without a presentence investigation report because he was ineligible for probation under KRS 533.060(1)and(2). The trial court then sentenced Casey to ten years in prison for robbery and ordered the sentence to be served consecutively to the sentence he was serving for a prior felony conviction.

In January 1998, Casey filed an RCr 11.42 motion challenging his conviction. He raised several grounds in the motion including: (1) Count I of the indictment dealing with robbery failed to state an offense; (2) he entered the guilty plea without understanding the true nature of the robbery offense; (3) he was denied the right to confront his accuser; (4) the trial court should have ruled on a pending motion to suppress prior to accepting the

plea; and (5) defense counsel was ineffective. After the Commonwealth filed its response, the trial court denied the motion without granting an evidentiary hearing, and this appeal followed.

■ On appeal, Casey challenges the sufficiency of the indictment and the performance of his attorney. He contends that the robbery count of the indictment failed to state an offense because it did not identify a person against whom force or the threat of force was used to accomplish the theft. Count I stated:

That on or about October 1, 1995, in Bullitt County, Kentucky, the above named Defendants, Christopher Naiser and Terry Casey, committed the offense of Robbery in the First Degree when in the course of committing a theft, they used or threatened the use of physical force with the intent to accomplish a theft at Beeler's Drug Store in Lebanon Junction, and while so doing one of the defendants was armed with a deadly weapon.

Casey relies on *Stark v. Commonwealth,* Ky., 828 S.W.2d 603 (1992), which held that failure to include in the indictment an allegation that force was used or threatened against a person rather than a business entity constituted a failure to state an offense for robbery. Casey alleges that he informed his attorney about *Stark* prior to entering his plea but that she merely indicated "she could not get anything done concerning that issue."

In *Thomas v. Commonwealth,* Ky., 931 S.W.2d 446 (1996), the Kentucky Supreme Court overruled the holding in *Stark* that a robbery indictment must specifically allege that a person was robbed. In *Thomas,* the court stated that the *Stark* court erroneously applied the strict standards of the older Code of Practice in Criminal Cases which had been superseded by the Rules of Criminal Procedure in 1963. The *Thomas* court noted that under RCr 8.18, "the only grounds on which ... an indictment can be attacked for the first time on appeal are: (1) '[l]ack of jurisdiction' or (2) failure of the indictment to 'charge an offense.'" 931 S.W.2d at 449.

The court in *Thomas* also stated:

All that is necessary to "charge an offense," as required by RCr 8.18, is to name the offense....

A lack of jurisdiction or failure to charge an offense may be raised "at anytime during the proceedings." RCr 8.18. However, all other defects in the indictment, such as failure to comply with RCr 6.10, must be "raised only by motion before trial." RCr 8.18.

*Id.* The court in *Thomas* concluded that the failure of the indictment to state that Thomas used or threatened force against a specific person did not mean the indictment failed to "charge an offense." *Id.* at 450. The court noted that failure to name the personal victim of the robbery in the indictment is a defect easily cured at the trial level by a bill of particulars or other discovery, and this type of defect must be raised by motion before trial. *Id.*

■ Similarly, in the case sub judice, although the indictment itself failed to specifically identify the store employees against whom the use or threat of force was used to accomplish the theft from Beeler's Drug Store, it was sufficient to "charge an offense." Furthermore, Casey was clearly aware of the identities of the three store employees because the Commonwealth's response to defense counsel's discovery request provided their names and the content of their statements to the police. Had Casey desired to raise this alleged defect in the robbery count of the indictment, he was required to have done so prior to entering his guilty plea. RCr 8.18.

■ Casey also argues that *Stark* should be applied to his situation because *Thomas* was not decided until after Casey entered his guilty plea and received his

sentence.[1] He contends that applying *Thomas* would violate due process and the Ex Post Facto Clause of the U.S. Constitution by constituting a retroactive application of case law. Although the ex post facto prohibition technically applies only to legislative action, the U.S. Supreme Court has recognized a similar limitation on judicial action under the Due Process Clause. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, so a court is barred by the Due Process Clause from achieving the same result otherwise forbidden by the legislature). The ex post facto principles applicable to judicial action give a person the right to "fair warning" of the type of conduct that will give rise to criminal penalties, prevent punishment for acts that were not criminal when the act was performed, and prohibit increasing punishment for acts committed prior to the change in law. *See, e.g., Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *Kurzawa v. Jordan,* 146 F.3d 435 (7th Cir.1998).

■ Furthermore, the retrospective ex post facto prohibition does not apply to procedural, as opposed to substantive, rules. *See Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Blair v. Armontrout,* 916 F.2d 1310, 1331 (8th Cir.1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 89, 116 L.Ed.2d 62 (1991). A rule or law is procedural rather than substantive where it does not affect the definition of the crime, the punishment prescribed for a violation, or the quantity or degree of proof necessary to establish guilt. *Dobbert, supra,* 432 U.S. at 294, 97 S.Ct. at 2298 (citing *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884)).

In the case sub judice, Casey has not demonstrated that the application of *Thomas* would violate due process. The *Thomas* court stated that it was merely applying the criminal rules as written and that the *Stark* court had erroneously applied the outdated criminal code. Application of *Thomas* would not affect the substantive aspects of robbery, increase the punishment for acts committed prior to the change, or constitute an unforseen judicial enlargement of an essential element of the robbery statute. Casey can hardly complain that he was prejudiced by an enlarged interpretation of a law under the *Thomas* decision because he was aware of the *Stark* decision but failed to challenge the indictment based on *Stark* before the trial court. The change in the law announced in *Thomas* deals with a procedural issue, not a substantive right.

■ Casey's other arguments also lack merit. He contends that counsel was ineffective for failing to seek dismissal of the indictment based on *Stark.* In order to establish ineffective assistance of counsel, a person must satisfy a two-part test showing that counsel's performance was deficient and that the deficiency resulted in actual prejudice affecting the outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Gall v. Commonwealth,* Ky., 702 S.W.2d 37 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). Where an appellant challenges a guilty plea based on ineffective counsel, he must show *both* that counsel made serious errors outside the wide range of professionally competent assistance, *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), and that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pled guilty, but would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88

---

1. *Thomas, supra,* was rendered on September 26, 1996, while Casey pled guilty and was sentenced on September 3, 1996.

L.Ed.2d 203 (1985); *accord Sparks v. Commonwealth*, Ky.App., 721 S.W.2d 726, 727–28 (1986).

 In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court held that while the performance prong is determined under the laws existing at the time of counsel's conduct, the prejudice inquiry is not limited to a contemporaneous time frame, but rather focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Id.* at 372, 113 S.Ct. at 844. The Court in *Lockhart* indicated that a defendant is not entitled to have a court make an error of law, even though the error would have been favorable to the defendant based on the law existing at the time of the proceeding. *Id.* at 369–70, 113 S.Ct. at 843–44. As explained above, *Thomas* set forth the law with respect to the sufficiency of an indictment. Consequently, even if counsel's performance was deficient for failing to challenge the indictment based on *Stark*, the court's decision in *Thomas* prevents Casey from establishing any actual prejudice.

Finally, Casey argues that counsel was ineffective in failing to ask the trial court to rule on his pending motion to suppress prior to allowing him to enter his guilty plea. Again, Casey has not demonstrated that he was prejudiced by the absence of a ruling on the motion. He has not alleged how or in what manner the search was invalid. Furthermore, even if the evidence seized in the search (the pistol) had been excluded, there was other evidence of Casey's participation in the robbery sufficient to support a conviction at trial. Had he gone to trial, the minimum sentence available on a robbery conviction was ten years, which is the sentence he received under the plea agreement. The trial court did not err in holding that Casey failed to establish that he received ineffective assistance of counsel and in denying his RCr 11.42 motion.

The order of the Bullitt Circuit Court is affirmed.

ALL CONCUR.

